JOSEPH P. KAMER v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, Appellant.—32 S. W. (2d) 1075.

Division One, November 18, 1930.*

*NOTE:. Opinion filed July 9, 1930; Motion for rehearing overruled October 14, 1930; Motion to transfer to Court en Banc overruled November 18, 1930.

794

Carl S. Hoffman and Everett Paul Griffin for appellant.

Mark D. Eagleton and Hensley, Allen & Marsalek for respondent.

LINDSAY, C.—This is a suit for damages brought under the Federal Employers' Liability Act. The plaintiff was employed as an air-brake inspector in defendant's railroad yards, known as the Baden Yards, in North St. Louis. In the course of his employment and on the morning of December 25, 1925, he received an injury which necessitated the amputation of his left leg about five inches below the knee, and some other injuries. He had a verdict for $20,000, and remitted the sum of $2,000, as required by the court, preliminary to the order overruling defendant's motion for a new trial. Defendant appealed from the judgment entered in the sum of $18,000. At the time of his injury plaintiff was forty-eight years of age, and had been employed in defendant's yards for more than two years, and prior to that time had been mostly engaged in railroad employment.

The tracks of defendant's yards extend from north to south, and of these some were used for storing cars, others for the switching operations required in making up freight trains. There is a track known as a "rip track" where light repairs were made on defective cars; also, tracks upon which cars are assembled by a switching crew, consisting of an engineer, fireman, a switch foreman and two switchmen, using a switch engine. The work and practice was for the switching crew to assemble on the appropriate track, and couple together cars for the making up of a certain outgoing train. After the cars for such a train were thus assembled and coupled, they were inspected by the car men, and by the airmen or air-brake inspectors who would inspect the air-brake appliances and couple the air-hose. Applicable to the work to be done by these men and for their protection while at such work, there was a rule referred to as the "blue flag" or "blue light" rule. It was as follows:

"A blue flag by day and a blue light by night, displayed at one or both ends of an engine, car or train, indicates that workmen are under or about it; when thus protected it must not be coupled to or moved. Each class of workmen will display the blue signals, and the same workmen are alone authorized to remove them. Other equipment must not be placed on the track so as to intercept the view of the blue signals without first notifying the workmen. When emergency repair work is to be done under or about cars in a train and a blue signal is not available, the engineman and fireman will be notified and protection must be given those engaged in making the repairs."

Plaintiff's working hours began at eleven o'clock at night, and ended at seven o'clock in the morning. On the night in question he began work at eleven o'clock. Shortly thereafter, a freight train designated as No. 93, was made up on a track known as track No. 5. Plaintiff placed blue lights at the end of train 93, and made inspection of the air appliances and coupled the air-hose on that

train. This train was pulled out of the yards about 12:30. The next train to be made up, and to require attention from the plaintiff, was a train known as No. 73, and the cars making up that train were being assembled on the track designated as track No. 1. After completing his work on train No. 93, on track 5, plaintiff and some other men went to the inspectors' shanty near the north end of the yards, where some of the men were eating a lunch. Plaintiff made out his card, or report, as to train 93, and then went over to track 5, to get the yard hose, blue lights and other equipment used in the inspection of train No. 93. These lights and equipment were placed near track 1 so as to be ready for use during the inspection to be made of train No. 73, after the cars in that train should be assembled and coupled. The plaintiff testified that as he came back from track No. 5, and was near the north end of track No. 1 and near the shanty, he met Mr. Morgenthaler, who was the switch foreman, and that Morgenthaler directed him to go down to a certain car standing on track No. 1, and see to the knuckle-lock, which was not operating. Asked to state what Morgenthaler said to him, plaintiff answered: "Why, he gave the number of the car, and he said that on the south end of it the knuckle-lock was not operating, and for me to go down and see it, and I asked him whether to put the blue light out and he said, 'No, that will bottle up the north end.' He said, 'We have several gaps,' and he said, 'I will take care of you, and I won't shove them down hard enough so as to bother you at all.' " Plaintiff in response to the instruction given by Morgenthaler went south along track 1, to see about the knuckle-lock. He passed along by twelve cars, standing together on that track. South of these twelve cars, at a distance of four or five car-lengths, were two more cars on track 1, and several car-lengths further south were a number of other cars on track 1. The south one of the two cars mentioned, was the car to which Morgenthaler directed the plaintiff. These were all cars which were to be part of train No. 73. The plaintiff said that about the time he "got down there and with his left hand had got hold of the pin rod to lift the knuckle-lock" he was hit and hurt. The car at which he was beginning his inspection, was suddenly moved forward from the impact of cars moved against the twelve cars, by the switching crew. The wheel of the car at which he was engaged, passed over plaintiff's left leg.

The petition charges negligence in several particulars: In directing and requiring plaintiff to go between the cars and assuring him he could do so with reasonable safety to himself, when defendant and its agents could have known that it was dangerous, and that plaintiff was likely to be injured; in suffering and permitting the cars of the said train to be suddenly moved; in failing to warn plaintiff that said cars would be or were likely to be moved; in failing to furnish and maintain for plaintiff a reasonably safe place

in which to work; in failing to exercise ordinary care to ascertain that plaintiff was engaged in work, and in such a position that the kicking of said cars against the others was likely. to cause injury to. plaintiff; in permitting such cars to be kicked against the other cars with unusual and unnecessary violence.

The answer, after a general denial, pleaded negligence on the part of plaintiff, in that, he knew or should have known that said cars were likely to be moved at any time, and that plaintiff without any care for his own safety, and without any necessity so to do, placed himself in a position of danger, without advising those in charge of the train of his intention. The answer further pleaded the rule and custom requiring the placing of the blue flag by day and the blue light by night, failure of plaintiff to comply with such rule and custom, and allegation that plaintiff, as a reasonably prudent person, would have appreciated the danger, and that he assumed all risks arising out of the circumstances complained of.

The reply was a general denial, and a denial that defendant had a rule or custom requiring blue flags or blue lights to be displayed by employees before the employee should do work at or about a standing train, which would have prohibited plaintiff from doing the work mentioned, under the circumstances mentioned. It further pleaded that no such rule or custom was ever observed, but that such rule or custom was habitually not observed with knowledge and consent of defendant; that if there was any such rule the same was abandoned and abrogated by its habitual non-observance on the part of defendant's employees.

The defendant complains of the refusal of defendant's peremptory instruction in the nature of a demurrer to the evidence, and there are also numerous objections founded on the giving and refusal of instructions in the submission of the case. Counsel urge that the demurrer should have been sustained upon two grounds: First, that plaintiff violated a positive rule in failing to set out the blue lights before going between the cars, and such failure was the sole and proximate cause of his injury; and next, that the danger of thus going between the cars was so obvious that an ordinarily prudent person would have seen and appreciated it, and plaintiff assumed the risk, the case being one under the Federal Employers' Liability Act, and there being no charge of a violation of the Safety Appliance Act.

The demurrer in both its aspects, whether plaintiff's negligence was the sole and proximate cause of his injury or whether he assumed the risk, is to be considered in view of what the evidence shows as to the reason for the plaintiff being where he was at the time he was injured, and in view of the circumstances immediately preceding his injury. The evidence was that one Hoff was foreman of the car men and air-inspectors, but was not on duty after midnight,

or at the time of the occurrences preceding plaintiff's injury. The yardmaster, who was in general charge of the yards and of all movements of cars, was not on duty at the time; but one Lester McCullon, who was engine foreman, was acting yardmaster on that night. Plaintiff testified that when a train is being made up the men were "not supposed to be between the cars, except by orders of the yardmaster or switching-crew foreman, if they want something looked after there," and that it was customary to take instructions from the foreman of the switching crew in the absence of the yardmaster or of the foreman of the air-men and air-brake inspectors, to which class plaintiff belonged. Plaintiff's own testimony and the testimony of some of the other men who worked in the yards was to the effect that certain minor adjustments about a car would be made on the track where it was, without setting out the blue lights. He testified that he took the instruction of Morgenthaler, the switch foreman, to go and see about the knuckle-lock, and that it was customary to do that—"to take the switching-crew foreman's word —not only on the Katy, but every railroad in the country—as long as they promise to take care of you." There was testimony to the effect that upon occasions the matter of some minor repair or inspection, might be referred to the foreman of the air-men, or if he was absent, to the yardmaster, or might be handled by the switch foreman. Plaintiff testified that at the time Morgenthaler gave him the order to go and see about the knuckle-lock, McCullon, the acting yardmaster, was not present, plaintiff did not know where he was, and he was not readily to be found at that time, and plaintiff obeyed the instruction of Morgenthaler, and trusted Morgenthaler's promise to take care of him while he was engaged in that duty. The testimony of McCullon, called by defendant, upon his cross-examination was to the effect that it was the practice as to these minor matters in the way of some slight adjustment to be made, to go and look for the yardmaster for authority; that if, in such matters, the yardmaster was first seen, he was told about it; but that if a car man was first seen, as more often happened, the car man was told about it, and that the "car men regardless of how they felt outside or inside about it," had been doing those things for years.

The plaintiff asked as to what were his duties, said he was "air-inspector and help car-inspector." Asked if it was his duty to repair knuckle-locks he said: "It was to a certain extent. It is every car man's duty to help work together so they get things moving." Morgenthaler denied that he told plaintiff to see about the knuckle-lock. Plaintiff said he went immediately after Morgenthaler gave the direction, and that he was injured in a little more than five minutes after he received the order from Morgenthaler.

The plaintiff was asked what was the custom as to putting out the blue lights when ordered to inspect a car by the switch

foreman, where a train was not made up, and cars were standing with gaps between them as described on the occasion in question. He said: "Wherever the switch foreman orders or was notified such work would be done, the work was then done without the blue light. It was customary all over." McCullon, the acting yardmaster called by defendant, on his direct examination was asked if the blue light rule was enforced in the Baden Yards. He said: "Well, it is; yes. It is in force out there on this train, but there are times now and then occasionally when we have a defective knuckle-lock or something like that in making up a train that we will go in there and either make repairs ourselves if we can do it, or if a car man is handy we will have him do it, but we will wait there for him until he makes the repair."

The plaintiff testified positively that Morgenthaler promised to protect him, said he "wouldn't hit them so hard as to bother those cars I was working on."

We take first, the contention of defendant that failure of plaintiff to put out the blue light before he went between the cars was a knowing violation of a positive rule made for his own safety, and was the sole and proximate cause of this injury. Numerous cases are cited.

In Francis v. Kansas City etc. Railroad, 110 Mo. 387, the deceased was a switchman. He stood in the middle of a track and attempted to step upon the footboard of an approaching switch engine. There was a rule that switchmen should board an engine from the side, and which forbade them standing in the middle of the track and stepping upon the footboard. In that case there was no question of complying with an order, given at the time according to a custom. In that case, at page 396, the court said: "There is no evidence here showing an established usage of violating the rule on the part of yardmen, nor an acquiescence on the part of their superior officers of even a single infraction." The act of the deceased was solely his own, in volition and performance.

In Yoakum v. Lusk, 223 S. W. 53, the deceased was doing repair work between cars on a track which was open, and although there was a blue-flag rule which applied to his situation, there was no blue flag set out. In that case there was nothing shown to give the men who ran the cars upon the track where the plaintiff was at work, any reason to believe that he, or anyone, would be there at that time. There was nothing shown of the circumstances under which the deceased went to work where he did, to modify the strict effect of the blue-flag rule.

Flack v. A. T. & S. F. Ry. Co., 285 Mo. 28, is cited. In that case the deceased attempted to tighten up a wash-out plug on an engine, at a time when the pressure of steam was about 200 pounds to the square inch. It was a rule that when a wash-out plug

was found to be loose, if pressure was on the boiler, the steam pressure must be reduced until there was no danger of the plug blowing out, while attempting to tighten it. That case was also one of a direct violation of a positive rule, and without the intervention of any other person in the circumstances under which the deceased attempted to do what he did, and without any evidence of any custom or fact in modification of the rule.

Great Northern Railroad Co. v. Wiles, 240 U. S. 444, is cited. In that case the deceased was the rear brakeman on a freight train which broke in two, through the breaking of a drawbar. The rear part of the train stopped. The deceased remained in the caboose which was struck by another train coming up. The deceased in that instance disobeyed a rule which required him, upon the stopping of his train, to go back at once and give warning for the protection of his train, as well as of himself.

Davis v. Kennedy, 266 U. S. 147, is cited. In that case the deceased was the engineer on a train which collided with another train. The circumstances were that the deceased ran his engine and train along one of two parallel tracks, to a place where the two tracks merged into a single track, and where a train coming from the opposite direction had the right of way. The crew of the train, passing from the double to the single track, had instructions never to pass the junction, unless they knew as a fact that the other train had already passed. It was held that the primary duty rested upon the engineer, and no recovery could be had because others in secondary relation, by doing more, could have prevented a collision. In the cases mentioned there was a rule promulgated, and a violation of the rule, but in those cases there was a lack of the element supplied in this case—by the evidence that the switch foreman had instructed plaintiff to make the inspection, with the evidence tending to show a custom and practice in the yards, to give such instructions to the car men and air-brake men, and that they were accustomed to do the thing they were told to do, and without setting out the blue light.

Counsel for defendant do not argue in a direct way that the switch foreman was not guilty of negligence in having the switch crew kick cars upon track 1, where plaintiff was engaged in accordance with the instruction given him. But that point is included in the contention that the plaintiff's own negligence was the sole, proximate cause of his injury. This is so, because, the contention made necessarily excludes existence of any negligence on the part of the switch foreman. The evidence tends to show that when a train was being made up, and some minor inspection or repair was necessary, it was the custom in defendant's yards to have the work done immediately by one of the car men or air-men, upon a direction given by the switch foreman, and meantime the work of the switching crew

was to be so regulated as to avoid injury to the men so engaged, from movements of cars. In this case the plaintiff testified that in directing him to do the work, the switch foreman promised to take care of him and not to shove the cars down hard enough to bother him. Under such circumstances we cannot hold as a matter of law that plaintiff's act in attempting to do the work without setting out the blue light was the sole, proximate cause of his injury. [Barry v. Hannibal & St. Joe Ry., 98 Mo. 62, 69; Yost v. Railroad, 245 Mo. 219, 245-7; Finnegan v. Railroad, 261 Mo. 503.] The switch foreman, according to plaintiff's testimony, desired the inspection to be done immediately, and, meantime, did not want the north end of track 1 "bottled up." We cannot say as a matter of law that the switch foreman was not negligent in having the crew place cars on track 1 with such force as to strike and drive other cars against the one to which he had directed the plaintiff. The act of doing so involved a violation of what the evidence tends to show was a custom under the circumstances, as well as violation of an assurance given a few minutes before to the plaintiff. The custom and the assurance had reference to the performance of a specific duty, under certain known circumstances. In this situation, the rulings in many cases are, we think, applicable: Halt v. Cleveland C. C. & St. Louis Ry. Co., 279 S. W. 148, where a custom, having nothing to do with a printed rule of the company, was violated, without warning to the plaintiff; Reading Co. v. Rorer, 15 Fed. (2d) 1017, where an assurance was given to a switchman as to the time and manner a certain incoming train would be handled; Preston v. Union Pacific Ry., 292 Mo. 442, 453, where there was an agreement to notify a switchman engaged in picking ice out of switch points; De Clue v. Mo. Pac. Ry. Co., 264 S. W. 992.

It is urged that the demurrer should have been sustained on the ground that plaintiff assumed the risk; that the danger of going between the cars, under the circumstances, was open and obvious, and respondent knew the danger was so open and obvious that an ordinarily prudent person would have seen and appreciated it. Under that point counsel cite a number of cases.

If this case must be considered solely in view of the rule requiring the setting out of the blue light, and of plaintiff's knowledge of that rule, and of knowledge on his part that a train was being made up on track 1, and cars would likely be switched upon that track—and must be considered without reference to any custom or practice in the yards as to the particular kind of work plaintiff was directed to do under the circumstances—and without reference to any custom or practice as to protecting the man engaged in such work—and without reference to any notice given, or knowledge that such work was to be done, or assurance of protection while it was being done,

then it would have to be said that the danger of going between cars on that track was obvious; that defendant owed the plaintiff no duty to warn him or to refrain from taking cars on that track; that his injury was caused solely by his own negligence, and in going between the cars he assumed all the risks incident to such condition.

Counsel call our attention to Hoch v. St. Louis & S. F. Ry. Co., 315 Mo. 1199, and to a number of Federal decisions: Boldt v. Pennsylvania Railroad, 245 U. S. 441; Southern Pacific Ry. v. Berkshire, 254 U. S. 415; Jacobs v. Southern Ry., 241 U. S. 229; Seaboard Air Line v. Horton, 233 U. S. 492. These Federal decisions are discussed in the Hoch case. The Federal rule, as to assumption of risk, applies in this case. [Quigley v. Hines, 291 Mo. 23.] In the Hoch case the deceased was an inspector, and was killed while between cars in the railroad yards, and engaged in making an inspection or some minor repairs. The existence of the blue-flag rule was shown. The deceased had not set out the blue flag. The plaintiff offered no evidence of a custom to give warning of a switching movement. In the course of the opinion it is shown there was some evidence tending to show a custom of non-observance of the blue-flag rule, and some evidence as to a rule that the bell should be rung before an engine should be started, and evidence that it had not been the practice or custom in defendant's yards to ring the bell before starting an engine. The evidence in that case was that none of the men engaged in the switching movement which resulted in the death of the deceased, had any knowledge that he was engaged in work between cars, or any knowledge of where he was; and the evidence was that the switching crew expected men engaged in such work as that being done by the deceased, to protect themselves, by setting out the blue flag, or by the use of their own senses. The point of distinction between that case, the Federal cases cited, and the case at bar, consists in the fact that in this case, according to plaintiff's testimony, he was directed a few minutes before the time of his injury, by the foreman in charge of the switching operations, to do a specific thing at a particular car on the track where the switching movement was made; and there is evidence of a custom and practice of the doing of such work by direction of the switch foreman, and of protection of the men in doing such work. In considering the question of whether the plaintiff assumed the risk of the switch foreman's negligence in causing or permitting cars to be switched upon track 1 at the time he did, such negligence of the switch foreman, if any, is to be considered as if negligence of the defendant. Under the evidence in this case as to the custom and practice in respect to the kind of duty imposed upon plaintiff by the direction of the switch foreman, we cannot say as a matter of law that the plaintiff assumed the risk of the performance of that duty, or, say that in view of the custom and practice in respect

to that particular form of work, and assurance of the foreman, the plaintiff assumed the risk incident to the negligent failure of the foreman to follow the custom and practice shown, and make good the assurance given. This is so, because, the direction was given to the plaintiff to be at a particular place for a specific duty, and the switching operations in charge of the switch foreman were to be conducted with reference to the position of the plaintiff at the particular place, and with reference to his safety at that place.

Taking the plaintiff's evidence as true as must be done upon the demurrer, we hold that the court did not err in overruling the demurrer.

The question of whether plaintiff assumed the risk in obeying the direction of the switch foreman was submitted under defendant's Instruction 7.

Defendant complains of plaintiff's Instruction 3. The several complaints taken together, constitute an objection that the instruction purports to cover the whole case, and directs a verdict, but that it omits essential facts, and elements necessary to be found to authorize a verdict. The instruction is long, but it is not necessary to set it out in full. It required the jury to find that the plaintiff was ordered and directed by the switch foreman to go between the cars; that plaintiff was assured by the foreman that he could do so with reasonable safety to himself; that plaintiff's duties required him to obey such orders and directions of the switch foreman; that plaintiff, acting within the line of his employment, did go between the cars; that defendant caused and permitted cars to be moved suddenly and without warning, and plaintiff thus and thereby was run over and injured; that the movement of said cars was caused by the switch crew, and the switch crew was in charge of the switch foreman; that the defendant "in thus causing the cars to be moved under the circumstances aforesaid, failed to exercise ordinary care and was guilty of negligence;" that plaintiff was in the exercise of ordinary care for his own safety; that defendant in moving the cars under the circumstances mentioned was guilty of negligence and that plaintiff was injured as the direct and proximate result of such negligence. The instruction does not, in express words, require a finding that defendant knew or in the exercise of ordinary care could have known that plaintiff was between cars; but, we do not think it must be held erroneous on that account. The finding that defendant under the circumstances was not in the exercise of ordinary care, and was guilty of negligence, is equivalent to a finding that defendant knew or in the exercise of ordinary care could have known plaintiff was between the cars. [Messing v. Judge & Dolph Drug Co., 18 S. W. (2d) 408; Berberet v. Amusement Co., 3 S. W. (2d) 1025, 1027; Morton v. Construction Co., 280 Mo. 360.] In the Messing case, supra, there was an attack

upon an instruction on like grounds, and the question was thoroughly discussed, and the objection overruled. The testimony of the plaintiff was that after being told by the switch foreman to go to the car mentioned by the switch foreman, he went down the line of cars to the car in question, and that his injury occurred within a little more than five minutes after being given the direction by the switch foreman.

There is further objection that the instruction fails to require a finding that the plaintiff did not know the cars were to be moved, or a finding of any facts justifying plaintiff's failure to comply with the blue-flag rule; and, that the instruction wholly ignores the element of assumption of risk. The instruction requires the jury to find that the plaintiff was in the exercise of ordinary care. As to the complaint that the instruction omits a requirement of a finding that plaintiff did not know the cars were to be moved, the requirement was not necessary under the facts in this case. The case was tried on the theory that the plaintiff knew or expected that cars would be moved, but that they would not be moved so as to collide with the car at which he was at work. As to the failure of a requirement of a finding of the other matters just mentioned, they were defensive matters, and were submitted under instructions given for defendant. The burden of establishing the pleaded defense of contributory negligence was on the defendant (Wilson v. Chicago, B. & Q. Ry., 296 S. W. l. c. 1026), and the burden of the defense of assumption of risk was on defendant. [Kanawha etc. Ry. v. Kerse, 239 U. S. 576.] These objections to plaintiff's Instruction 3 are to be considered in connection with certain instructions given for defendant, instructions numbered 6, 7 and 8 for defendant, each of which authorized a verdict for defendant upon certain facts hypothesized. The instruction for plaintiff authorizing a verdict submitted the elements of recovery on the theory that the plaintiff went between the cars by the direction of the switch foreman, and upon the foreman's assurance it was reasonably safe, and that plaintiff was required to obey the direction of the switch foreman. The defenses set up in the answer were, that plaintiff negligently went between the cars without necessity so to do, and without advising those in charge of the train of his intention; that the blue-flag rule was in force, and he failed to comply with it. Defendant's instructions 6, 7 and 8 are not contradictory of plaintiff's Instruction 3, but present in various forms, the defenses pleaded. Defendant's Instruction 6 presents the theory that plaintiff acted with knowledge of the blue-light rule and in violation of it, and that defendant did not know he was between the cars. Defendant's Instruction 7 presents the theory that plaintiff acted with knowledge of the blue-light rule and in violation of it, and that even if he went between the cars by direction of the switch foreman, the danger was so apparent

that a reasonably prudent man would not have done so. Defendant's Instruction 8 presented the theory that plaintiff knowing a train was being made up, without placing the blue lights, and without notifying the defendant of his intention, went between the cars, and that the danger of the train being moved was so obvious that a reasonably prudent man would have seen and appreciated the danger.

The submission in these instructions of the elements constituting the defenses set up in the answer, and authorizing a finding for defendant under the facts so hypothesized, together with the submission under plaintiff's Instruction 3, embraced all the substantial issues in the case. The omission of the defense of assumption of risk from plaintiff's instruction was supplied by defendant's instructions 7 and 8. The defense that the blue-light rule was in force, and plaintiff knew it, and negligently disregarded it, and defendant did not know he was between the cars was submitted under defendant's Instruction 6. Since the plaintiff's instruction authorizing a verdict submitted the elements necessary to a recovery, and the defendant's instructions authorizing a verdict for defendant submitted the defenses pleaded, the plaintiff's instruction cannot be condemned as erroneous in not submitting those defenses. [State ex rel. Jenkins v. Trimble, 291 Mo. 227; Heigold v. United Railways, 271 S. W. 773; Rawie v. C. B. & Q. Ry. Co., 310 Mo. 1. c. 97.]

It is complained that plaintiff's instruction gave the jury a roving commission to find negligence without specifying what particulars would constitute negligence. We think the instruction is not subject to that objection. It submitted the circumstances under which the cars were moved and required a finding that defendant was negligent "in thus causing said cars to be moved under the circumstances aforesaid."

It is complained that the instruction conflicts with defendant's Instruction 1. Defendant's Instruction 1 is as follows: "The jury are instructed that plaintiff is not entitled to recover in this action for or on account of the allegation that defendant, its agents and employees negligently and carelessly caused, suffered and permitted cars of its train to be suddenly moved, and that specification of negligence is withdrawn from your consideration."

Plaintiff's instruction does submit the question whether the defendant caused or permitted cars of the aforesaid train to be moved suddenly and without warning, but it makes that submission under and in connection with the circumstances theretofore recited. Defendant's instruction was limited to the specific item of sudden movement of the cars while plaintiff's instruction required finding that the cars were suddenly moved without warning and with reference to the other circumstances. When so considered they are not irreconcilable, as was found and said in Kuhlman v. Water, Light & Transit Co., 307 Mo. 607, and other cases to which counsel refer.

Complaint is made of plaintiff's Instruction 4 on the measure of damages. The complaint is that the answer alleged contributory negligence and that there was evidence from which the jury could have found plaintiff was guilty of negligence, yet that the instruction, nevertheless, authorized full recovery, and did not require the jury to diminish the damages if plaintiff was guilty of negligence contributing to his injury. The plaintiff's case was brought and tried on the theory that his injuries were due solely to defendant's negligence. The defendant alleged that plaintiff's injuries were due solely to plaintiff's own negligence. The defendant asked no instruction on the measure of damages, or, that plaintiff's damages be diminished if it should be found that his own negligence contributed to cause his injury. Having failed to ask any instruction submitting the question whether plaintiff's damages should be diminished, or limiting the amount of his recovery the defendant cannot now be heard to complain upon appeal that plaintiff's instruction did not submit that question, or authorize the jury to diminish the damages. [Sallee v. St. Louis-San Francisco Ry., 12 S. W. (2d) l. c. 479; Kleinlein v. Foskin, 13 S. W. (2d) l. c. 658.]

Complaint is made of the refusal of the court to give defendant's Instruction 4. That instruction would have told the jury that plaintiff was not entitled to recover on account of the allegation that defendant negligently failed to warn plaintiff that the cars would be or were likely to be moved, or that other cars would be propelled against the cars in said train, and withdrew that allegation of negligence from their consideration.

Counsel for defendants say that under the evidence in the case negligence could not be predicated upon failure to warn the plaintiff. They cite Yoakum v. Lusk, 223 S. W. 53, a case heretofore referred to. That case is readily distinguishable from the case at bar. In that case the deceased was working between cars upon a track which was open, and was subject to the blue-light rule, and there was no evidence tending to show that the employees operating the train had actual knowledge that he, or anyone, was at work upon that track. In this case, under the plaintiff's testimony, the foreman in charge of the switching operation knew that plaintiff would be, or was likely to be, between the cars. The giving of the instruction in the case at bar would have been confusing and improper as withdrawing from the jury consideration of circumstances materially bearing upon the question of defendant's negligence.

Defendant assigns error in the refusal of the court to give its Instruction 5, which would have told the jury that plaintiff was not entitled to recover on account of the allegation that defendant negligently failed to exercise ordinary care to furnish and maintain

for plaintiff a reasonably safe place in which to work, in that, defendant caused and permitted cars to be kicked against the cars of said train. We hold that it was not error to refuse this instruction. Plaintiff's right to recover was submitted under a definite theory hypothesizing the existence of the various elements authorizing a recovery. There is nothing in the record to show that the petition was read to the jury, and under the circumstances under which the case for plaintiff was submitted, the giving of defendant's Instruction 5 would have confused, rather than enlightened the jury.

Complaint is made by defendant of the refusal of an instruction for defendant numbered 6, in the series of refused instructions. Said instruction is as follows:

"The jury are instructed that if you find and believe from the evidence that the rules of defendant which were in force in the Baden yards at the time plaintiff is alleged to have sustained injuries required that before plaintiff should do any work at night at, about or between cars, he should place blue lights at each end of the cars, and that it was the practice and custom in said yards for the men working in said yards to comply with and follow said rule and custom, and that plaintiff knew of said rule and custom, then no employee had the right to violate said rule and custom or to direct plaintiff to go about or between cars without having first placed blue lights at the ends of the cars, and even if you find that plaintiff went in between the cars at the direction of the foreman of the switching crew at a time when there were no blue lights displayed as required by said rule and was injured as a result thereof, then your verdict will be for the defendant."

This instruction as framed would have been understood by the jury as an assumption by the court that the blue-light rule was in force at the time plaintiff sustained his injury, and as an assumption that no employee had the right to violate said rule or to direct plaintiff to go between the cars without having first placed the blue lights at the ends of the cars. As drawn, it would have tended to have the jury disregard the testimony that it was customary for some slight inspection or repair to be made without setting out the blue light, and disregard the testimony of the acting yardmaster McCullon.

Complaint is made of the remark of counsel for plaintiff in the course of his cross-examination by defendant's counsel. Counsel for defendant was cross-examining plaintiff about the injury sustained. Plaintiff testified that he had a number of teeth knocked out at the time he received the other injuries by being run over by the car. Counsel for defendant was inquiring of plaintiff how he could prove the loss of these teeth in the accident in question. Counsel by question suggested or inquired

if he could prove it by the doctor who treated him at the hospital. Plaintiff said: "Well, I don't know about the doctor." Counsel for defendant then asked the following question: "You can prove by the doctor that your teeth were broken off?" At this point counsel for plaintiff said: "If the court please, we won't vouch for the doctor that was furnished by the company as to what he would say." Counsel for defendant objected, and asked that the jury be discharged for that remark, saying: "This doctor was not furnished by the company, but by the Employees' Association." The court refused to discharge the jury and told them to disregard the statement of plaintiff's counsel, and admonished them not to pay any attention whatever to that statement. In such matters much must be left to the exercise of a sound discretion by the trial court. The action of the trial court will not be interfered with on appeal, unless there is apparent an abuse of discretion; and the circumstances here in the record do not show such an abuse.

It is insisted that even after the *remittitur*, the judgment for $18,000 is excessive. According to the plaintiff's testimony he was forty-nine years old at the time of the trial, or, about forty-seven years old at the time of his injury. His earnings amounted to $5.20 per day, and he worked seven days in the week.

The plaintiff testified that five of his teeth were knocked out in the accident; that the bone of his right elbow was injured and as a result he lacked strength of grip and the proper use of his arm. He also testified that his back was wrenched and sprained, and the medical testimony was to the effect that he had arthritis in the lumbar region of the spine. His testimony was that he suffered much pain and had been unable to work and earn any wages since his injury. Of course the outstanding injury was that which made necessary the amputation of his left leg below the knee. He was injured in December, 1925, and in June, 1926, procured an artificial leg, but his testimony is to the effect that he was unable to use this successfully or without pain, and on that account had not used it at all during the four or five weeks preceding the trial. Medical testimony for plaintiff was to the effect that the stump of his leg had become greatly infected and inflamed, and there had been a great accumulation of pus. The physician testified that in order for the plaintiff to wear an artificial limb it would be necessary to amputate his leg at the knee or more likely above the knee, to procure a stump for an artificial limb.

Defendant had testimony to the effect that plaintiff did not lose any teeth in the accident, and the medical testimony for defendant in many respects was in conflict with the testimony of plaintiff, and his claim as to the condition of his right elbow and of his back. Defendant's testimony as to the arthritis was that it was not an

uncommon ailment in people of advancing years, but one of defendant's physicians said the arthritis might be due to focal infection, which a blow or an injury might aggravate and make active.

Under the rate of plaintiff's wages and steady employment he had lost about $2,200 in wages at the time of the trial. The testimony went at some length into his physical condition. The trial court heard this testimony and by the *remittitur* approved the damages in the amount of $18,000.

Counsel on both sides have cited numerous cases. We merely mention some of these, without going into the circumstances: Westover v. Wabash Ry., 6 S. W. (2d) 843; Van Loon v. Railway, 6 S. W. (2d) 587; Northern v. Chesapeake and Gulf Fisheries Co., 8 S. W. (2d) 982; Woods v. St. Louis Merchants' Bridge Terminal Ry., 8 S. W. (2d) 922; Kepner v. Cleveland, C., C. & St. L. Ry. Co., 15 S. W. (2d) 825.

Our attention is also called to Kinney v. Metropolitan Street Ry. Co., 261 Mo. 97; Bryant v. Kansas City Ry. Co., 286 Mo. 357; Williams v. Fleming, 284 S. W. 794. Necessarily each case must be governed by its own facts, and a hard-and-fast rule cannot be stated. We conclude we are not warranted in interfering with the action of the trial court, and the result of his judgment founded upon consideration of all the testimony, and with the parties all before him, and the judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.