**W. L. SANDIFER, Respondent,**

**v.**

**Guy A. THOMPSON, Trustee of the Missouri Pacific Railroad Company, a corporation, Appellant.**

**No. 44262.**

Supreme Court of Missouri.

Division No. 2.

May 9, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied June 13, 1955.

Harold L. Harvey, St. Louis, Hilary A. Bush, Fred A. Murdock, Johnson, Lucas & Bush, Kansas City, for appellant.

Jo B. Gardner, Sam R. Gardner, Monett, for respondent.

WESTHUES, Judge.

This case comes to the writer on reassignment. It was submitted and argued at the September Session, 1954, and was assigned to a judge who has since retired.

Plaintiff W. L. Sandifer filed this suit in the Circuit Court of Vernon County, Missouri, to recover damages for personal injuries alleged to have been sustained through the negligence of the defendant Missouri Pacific Railroad Company. A trial resulted in a verdict and judgment for plaintiff in the sum of $30,000. The defendant railroad company appealed.

Defendant has briefed four points seeking a reversal of the judgment. The first two pertain to instructions given at plaintiff's request; the third, to the admission in evidence of the "Life Expectancy Table Found in Corpus Juris Secundum"; and in the fourth point briefed, defendant says the verdict is grossly excessive.

The evidence discloses the following: Plaintiff was employed as a hostler's helper by the defendant railroad. On May 2, 1951, the date plaintiff was injured, he and C. M. Little were preparing an engine in the defendant's yards at Alexandria, Louisiana, for a run. This preparation included filling the water tank and the oil tank. C. M. Little was acting as the hostler and, as such, had charge of the engines. An engine was "spotted" at the water tower and plaintiff lowered the spout of the water tower, inserted it in the opening of the water tank on the engine, and opened the valve to permit the water to flow. While the water was flowing into the tank of the engine and before it was filled, the engine was moved. The spout, as it was forced out of the opening in the tank, struck plaintiff and knocked him down, inflicting the injuries for which he asked damages.

Plaintiff, in his petition, stated that at the time he was injured, the engine on which he was stationed was moved in violation of the rules of the company. The rules were set forth in the petition and the portions applicable to the issues in the case are parts of Rules 30 and 508. The portion of Rule 30 reads as follows: "* * the engine bell must be rung when an engine is about to move * * *." Paragraph 9 of Rule 508 provides in part that

"Engineers must not move engines from fueling stations until they are certain that employees operating delivery apron, or crane, have fully completed the operation. Water spouts, water or oil crane, coal chute, hose or pipe must not be moved to or from the tender while the engine is in motion, and must be empty before they are moved after being used. They must be replaced and secured in proper position * * *."

The defendant in its answer expressly admitted "that at all times mentioned in plaintiff's petition that defendant had in full force and effect" the rules above set forth.

Plaintiff testified that he did not give Little any signal to move the engine and Little gave plaintiff no notice that he was about to move the engine. Plaintiff stated he heard no bell or whistle prior to the movement of the engine. The hostler in charge of the engine, Mr. Little, testified that he looked back toward the tank of the engine before moving the engine and saw the feet and legs of a man standing at the edge of the tank; that he could not see the man's body or head; that he thought the man was Sandifer and therefore he concluded Sandifer was through with his work and ready to have the engine moved; that he then sounded two blasts of the whistle, waited a minute or two, and then moved the engine. He admitted that he did not ring the bell and that he had received no signal to move. Little stated that it was a custom in the yards not to ring the bell but to give notice by whistle. Plaintiff testified that he would have stepped to a place of safety if he had heard two blasts of the whistle but that no such notice was given. It was admitted that plaintiff was not standing at the edge of the tank.

The case was submitted to a jury by an instruction advising the jury in substance that it was admitted the rules above-mentioned were in force and if the jury found that Little moved the engine in question without ringing the bell thereon "and without being certain that plaintiff had finished taking water and before the water spout was empty and had been replaced and secured in proper position, then you are instructed that defendant was guilty of negligence" and if such negligence caused or contributed to cause plaintiff's injuries, a verdict for plaintiff should be returned.

■■ It is this instruction that defendant in its first point claims is erroneous. It is argued that there was evidence of a custom and evidence that defendant acted in conformity with that custom. There was evidence of a custom that notice was often given by blasts of the whistle and not by ringing a bell. However, there was no evidence of any custom of a change in Rule 508 which required Little before he moved the engine to make certain that plaintiff had completed his operation of filling the water tank and replacing the water spout. Little admitted that he violated that rule. He received no signal to move and his only justification for concluding plaintiff had completed his task was that he saw the legs of a man at the edge of the tank. The instruction required the jury to find, before authorizing a verdict for plaintiff, that the bell was not rung *and* that Rule 508 was violated. Defendant's first point is therefore without merit. In the case of Reed v. Terminal R. Ass'n of St. Louis, Mo., 62 S.W.2d 747, cited by defendant, the pleadings, as well as the evidence, presented an issue of fact whether a rule had been waived. The case does not aid defendant. A violation of a rule as admitted in this case constituted negligence. Hampton v. Wabash R. Co., 356 Mo. 999, 204 S.W.2d 708.

■ Defendant further argues that instruction No. 1 "effectively precluded the jury from considering the evidence constituting defendant's defense." To this we cannot agree. Defendant offered and the court gave an instruction advising the jury that if the negligence of plaintiff in failing to move to a position of safety after the whistle signal was given to move the engine was the sole cause of plaintiff's injuries, then a verdict should be found for the defendant. This instruction disregarded the admitted negligence of the violation

of Rule 508. The instruction was too favorable to the defendant and should not have been given. Plaintiff's negligence, if any, was only a concurring cause of his injuries. Hampton v. Wabash R. Co., supra. Instruction No. 1 in no way precluded the jury from considering plaintiff's negligence in arriving at the amount of the verdict. Defendant requested and the court gave an instruction telling the jury that in case a verdict was found for plaintiff, then plaintiff's negligence, if any, should be considered in arriving at the amount of damages. Defendant was entitled to this instruction. We, therefore, rule that the instructions were not prejudicial to the rights of the defendant.

■ Defendant complains of instruction No. 3. It reads as follows: "The court instructs the jury that if you find the issues for the plaintiff, then in arriving at the amount of his damages, if any, you must not consider whether or not defendant might appeal this case." This instruction may be termed a cautionary instruction, the giving or refusing of which lies within the discretion of the trial court. Defendant says it injected a false issue into the case and tended to mislead and confuse the jury. We cannot see in what manner such an instruction presents an issue for the jury. Nor can we say that it could mislead or confuse a jury. It is simply an abstract statement of law and might well have been refused. We cannot see how it would aid a jury in reaching a verdict. Defendant says that the instruction was harmful in this case when considered in connection with the argument of plaintiff's counsel to the jury. We have read this argument in full. Our conclusion from reading the argument is that the jury did just what plaintiff's lawyer did not want them to do. Plaintiff asked $125,865.60 as damages for his injuries. In the argument, the jury were urged to return a large verdict; that plaintiff did not want a small verdict of $25,000 or $30,000. Note a portion of his argument: "Mr. Bush would be tickled to death if you would bring in a little old twenty-five or thirty thousand dollar verdict in this case and you know it. He would

go home and have one of the finest Christmases he ever had. The Missouri Pacific would be patting him on the back from now on."

The trial court did not consider that the instruction and the argument based thereon resulted in damage to the defendant. From a reading of the record, we have reached the conclusion that the trial court was right.

■ Defendant, in its third point, says the trial court erred in permitting plaintiff's counsel to read to the jury the "Life Expectancy Table Found in Corpus Juris Secundum." The objection made was that plaintiff's lawyer was not sworn and that the statement's being read to the jury constituted nothing more than an unsworn statement of the attorney. No contention was made at the trial nor in the brief on this appeal that the statement read to the jury was not as it appeared in Corpus Juris Secundum. In view of that, we must overrule the defendant's contention. The mortality table may be found in 58 C.J.S., p. 1212. Plaintiff's age was 50 and the expectancy 21.37. See also 32 C.J.S., Evidence, § 719, p. 629.

■ The final point briefed pertains to the amount of the verdict. This court has consistently adhered to the rule that a verdict of a jury in assessing damages will not be disturbed unless it is grossly excessive or inadequate. Approaching the question of excessiveness of the verdict in this case, we shall state briefly the facts pertinent to that issue. Plaintiff, when injured, was 47 years old, earning according to defendant's theory $266.66 per month. Up to the time of trial plaintiff, due to a ruptured intervertebral disc, had been totally disabled, causing loss of wages in the sum of $8,948.54. Plaintiff's actual expenses amounted to about $500. This low cost was due to the fact that plaintiff was treated at hospitals operated in connection with the railroad in Alexandria, Louisiana and in St. Louis, Missouri. Plaintiff spent much time in hospitals receiving treatments. The injury caused con-

siderable pain from the day of injury to the time of trial. Heat applications and the wearing of a brace reduced pain to some extent but this was only temporary relief.

Dr. Robert D. Woolsey, a specialist in neurosurgery, testified that without an operation plaintiff would remain totally incapable of performing any manual labor; that an operation would in all probability aid plaintiff to a great extent. The doctor testified he had performed numerous such operations. His experience as to the results of such operations can best be shown by quoting from his testimony. Note what he said:

"Q. Doctor, after surgery, what about the prognosis, what would you say about the future of this man's condition, with reference to his ability to perform manual labor? A. Well, it has been my experience that I have been able to get about between fifty and sixty per cent of the patients that I do, back to performing their previous job; the other forty per cent are variable, some of them have to take jobs that are easier, which calls for less strain in their back; about between five and ten per cent of them are not profited much and continue to have pain in their back and pain in their leg; the other thirty do varying amounts of hard work, some of them can't do hard work, they have to take a desk job.

"Q. Even with the best surgical result, that percentage of patients to which you referred, is there some permanent disability? A. Yes, sir.

"Q. And could you give that percentagewise? A. When I have a compensation patient for whom I have to give a rating as to what their disability is, after I have done surgery on them, with the best result that I can produce, I recommend that the patient is between twenty and twenty-five per cent totally and permanently disabled.

"Q. That is, his body as a whole? A. That is correct."

 In determining whether a verdict is grossly excessive, an appellate court reviews the evidence in the light most favorable to plaintiff. In view of the evidence, it seems to us that the amount of the verdict cannot be said to be such as to justify our interference. See Triplett v. Beeler, Mo.Sup., 268 S.W.2d 814, loc. cit. 819(9–11) (12); Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674, loc. cit. 681(14–17).

The judgment is affirmed.

LEEDY, P. J., and DEW and ANDERSON, Special Judges, concur.

EAGER and STORCKMAN, JJ., not sitting because not members of the court when cause was submitted.