RUTH VIOLA PETTY, pro ami, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 39417.—191 S. W. (2d) 653.

Division One, December 3, 1945.

Rehearing Denied, January 7, 1946.

*Charles L. Carr* and *Harding, Murphy & Tucker* for appellant.

826

*Williams F. Knowles, Gilbert R. Titus, Paul C. Sprinkle* and *Sprinkle & Knowles* for respondent.

VAN OSDOL, C.—Action for personal injury. Nine jurors agreed upon a verdict awarding plaintiff damages in the sum of $30,000. The trial court required a remittitur of $12,000, and judgment was rendered for $18,000. Defendant has appealed.

Plaintiff, a girl three years and four months of age, accompanied by her aunt, a child nine years of age, passed northwardly from the southeast corner of the intersection of Twelfth and Harrison Streets in Kansas City. Defendant's streetcar, eastbound on Twelfth Street, struck plaintiff, crushing her left leg under a wheel; it was necessary to amputate her leg three inches below the knee.

Plaintiff's case was submitted to the jury on failure to observe; on excessive speed under the circumstances; and on speed at which the streetcar could not be controlled or so slowed as to avoid a collision. Defendant had filed a general denial.

Defendant (appellant) has made twelve assignments of error, presenting five principal contentions for review. (1) Plaintiff made out no case submissible to the jury. (2) Plaintiff's Instruction Number One was erroneous in failing to correctly state the substance of city ordinances, and in submitting to the jury the question whether the ordinances were in force; in submitting the existence and legality of an ordinance which had been repealed; in being so long and involved as to mislead; and in telling the jury "because of the tender age of the plaintiff that she cannot be charged with contributory negligence"—an issue not in the case. (3) A child's testimony should have been excluded upon objection, the child being unable to meet the test of competency. (4) Demonstrations in the courtroom, pictures of plaintiff admitted into evidence, and impassioned argument of plaintiff's counsel caused the jury to be highly sympathetic to plaintiff and prejudiced against defendant. And (5) the verdict, as reduced by remittitur, was excessive.

In reviewing defendant's contention (1) it is necessary to examine the evidence from a viewpoint most favorable to plaintiff.

Twelfth Street, an east-west street, is intersected at a right angle by Harrison Street. Harrison Street is 35 feet wide from curb to curb, and there are areas of 18 or 20 feet in width between the building lines and the curbs on either side of the street. Defendant's

trolley lines extend along Twelfth Street. The south rail of the south, eastbound, trolley line is 10 feet 3 inches from the curb at the southeast corner of the intersection. South of Twelfth Street, a sidewalk along the east side of Harrison Street divides the area between the building line and the curb.

· Plaintiff was injured at about 3:30 P. M. on February 1, 1943, a dry, clear day. The two children, plaintiff and her aunt, were walking northwardly along the sidewalk on ▮▮▮ the east side of Harrison Street, intending to go to a drugstore at the northeast corner of the intersection. The older child was on the right and was leading plaintiff by the hand. As they passed from the south curb of Twelfth Street over and onto the tracks of the south (eastbound) trolley line, defendant's streetcar moved eastwardly across Harrison Street. Plaintiff's aunt escaped injury, but plaintiff was struck down; the left front wheel of the front truck of the streetcar passed onto her lower left leg, pinning her down to the rail.

There was evidence tending to show that defendant's streetcar was approaching the intersection at a speed of eighteen to twenty-five miles per hour; that the car was west of Harrison Street when plaintiff and her aunt had passed across the south curb of Twelfth Street, and they were "almost to the street car line" when the front end of the streetcar was "over at the southwest corner"; they walked "straight north across the street." The speed of the streetcar was not slackened until or after it had reached a point even with the west curb line of Harrison Street. The streetcar was brought to a stop by emergency application of brakes when it was a few feet east of the intersection. According to the testimony of defendant's operator, the streetcar, traveling at a speed of fifteen miles per hour, could be stopped by emergency application of brakes in 30 or 40 feet—traveling at twenty miles per hour, in 60 or 70 feet. There was also evidence tending to show that the operator was not attentive to the eastward but, upon coming to a point even with the west side of Harrison Street, "had his head turned south," and that the streetcar had moved "around ten or fifteen feet" into Harrison Street "before he turned to face east again." Witnesses testified the children were walking slowly as they moved into the street—they were walking "about half as fast as an adult would walk." At Twelfth and Harrison, ". . . there is always people around that corner. . . . people are living there and there are business houses along both sides." Under these facts, we believe plaintiff's case was clearly submissible to the jury, not only on issues of negligence in moving at an excessive rate of speed under the circumstances and moving at a rate of speed at which the streetcar could not be slowed to avoid collision, but also on the issue of negligence in failing to observe.

▮▮▮ Defendant, in its brief, emphasizes testimony appearing in the record that, when the streetcar traveling at the speed of ten or

twelve miles per hour reached the west curb of Harrison Street, defendant's operator saw the children standing on the curb in safety approximately 10 feet south of the south rail of the eastbound trolley line; and that, when the streetcar was halfway across Harrison Street, the children "stepped off fast-like," and the emergency brakes were applied when the streetcar was "eight or ten feet from the east side of Harrison." It is said plaintiff relies upon evidence inherently impossible—the children could not have slowly walked from the south curb over to the north rail of the south trolley line while the streetcar was moving the distance across Harrison Street at a speed of twenty or twenty-five miles per hour; and the streetcar, traveling at such speed, could not have been stopped in the distance from a point "eight or ten feet from the east side of Harrison" Street and the point of the casualty. And defendant argues that its operator had the right to assume that the children would not leave the position of safety and walk or run out in front of the approaching streetcar; that the law imposed no obligation on the part of the operator to check speed until he saw, or in the exercise of due care should have seen, the children were going to move from the position of safety and out onto the tracks of the trolley line. The case of Holzemer v. Metropolitan Street Railway Co., 261 Mo. 379, 169 S. W. 102, is cited. In the Holzemer case negligence under the humanitarian rule was submitted—in the case at bar primary negligence is in issue. Defendant's argument grasps upon testimony favorable to defendant, and fails to give credence to the testimony favorable to plaintiff, which we have noted, of the rate of speed at which the streetcar was moving; of the failure of defendant's operator to be attentive, and of the children's position and manner of approach to the point of the casualty. Defendant's argument also ignores the tender age of the children and, in arguing its operator's duty under the circumstances, assumes that he might reasonably anticipate that the children would exercise the same precautions for their own safety as is to be expected of adults.

(2) Instruction Number One is in part as follows:

"The court instructs the jury that because of the tender age of the plaintiff that she cannot be charged with contributory negligence; so therefore you are further instructed that if you find and believe from the evidence ... that the defendant was operating street cars in both easterly and westerly directions upon 12th Street ... and if you further find ... that the defendant was operating a street car ... in an easterly direction on 12th Street and when the plaintiff was leaving the south curb line ... said street car was at or near the west curb line of Harrison Street ... and if you further find ... that the plaintiff continued walking across 12th Street in plain view of the operator of defendant's street car ... until plaintiff had reached a position near the north

rail of the east bound car tracks . . . when she was struck by said street car . . . and if you further find . . . that at the time of the accident there was in force . . . a city ordinance regulating the speed of street cars within a described congested district to 15 miles per hour and there was also an ordinance requiring the operator of a street car to operate it at a speed which was reasonable and prudent under the conditions then and there existing and requiring a street car to be operated at the speed so that it could be controlled or the speed slowed up when necessary in order to avoid a collision with persons . . . and if you further find . . . that the intersection of 12th and Harrison Streets, and the place where plaintiff was injured, was in the congested district referred to in said ordinance . . . and if you further find . . . that from the time plaintiff left the south curb of 12th Street as aforesaid up until the time of her injury that defendant's street car was operated at a greater rate of speed than 15 miles per hour . . . and if you further find . . . that defendant's street car was operated . . . at a greater speed than was reasonable and prudent under the circumstances then and there existing . . . and if you further find . . . that at the time and place referred to herein that defendant's street car was operated at a greater speed than would permit the operator to control the street car and decrease the speed in order to avoid a collision with the plaintiff . . . and if you further find . . . that the operator of said street car did not observe the plaintiff although she was in plain view in time to slow up the speed of said street car and thereby avoid striking plaintiff . . . and if you further find . . . that the manner of operation of said street car in the respects enumerated herein was negligence, and if you further find and believe from the evidence that that negligence, if any, directly caused the collision and injury to the plaintiff, if any, if you so find, then you are instructed that your verdict shall be in favor of the plaintiff and against the defendant.''

Ordinances of Kansas City had been pleaded and introduced into evidence by plaintiff, ''No street car shall in any case, be run or operated upon, over or across any street in this City at a greater rate of speed than 15 miles per hour in the congested district, . . .'' (The intersection involved is situate within the described congested district.) ''No person shall drive or operate a vehicle or street car upon a street at a greater speed than is reasonable and prudent, having due regard to the traffic, surface and width of the street and the hazard at intersections and any other conditions then existing. . . . Nor shall any person drive or operate at a speed which is greater than will permit the driver or operator to exercise proper control of the vehicle or street car, and to decrease speed or to stop, as may be necessary, *to avoid colliding with any person,* vehicle or other convey-

ance upon or *entering the highway in compliance* with the legal requirements and *with the duty of* drivers, operators and other *persons using the highway to exercise due care*; provided, that this provision shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence upon the part of the defendant.'' (Our italics.)

Invalidity of the ordinances was not raised as an issue by defendant's answer, and we do not see that the defendant was prejudiced by the submission of the question of whether the ordinances were ''in force.'' The instruction correctly advised the jury of the substance and legal effect of the ordinances as applicable to the issues of the case; and the jury were required, in rendering a verdict for plaintiff, to find that a violation of the ordinances was negligence, and that such negligence was the direct cause of plaintiff's ▮ injury. It was not erroneous, in our opinion, to omit from the instruction the substance of the clause italicized; and we believe the ordinance was nonetheless applicable in defining defendant's duty toward plaintiff who is not held to have the capacity to exercise due care. In instructing upon the duty prescribed by an ordinance it is unnecessary to set out the ordinance verbatim. The instruction should correctly advise the jury of the legal effect and meaning of the ordinance as applicable to facts hypothesized, however. Hogan v. Fleming, 317 Mo. 524, 297 S. W. 404.

▮ Of defendant's contention that the ordinance, limiting the speed in the described congested district to fifteen miles per hour, had been repealed—it is noted that defendant did not raise that question until its motion for a new trial. The ordinance, relied upon by plaintiff, was pleaded in her petition; and the defendant, as we have said, filed a general denial. Defendant should have challenged the validity of the ordinance at the earliest opportunity—in the answer (the ordinance's asserted invalidity not appearing on the face of the petition). McGrath v. Meyers, 341 Mo. 412, 107 S. W. 2d 792; Roper v. Greenspon, 272 Mo. 288, 198 S. W. 1107; Lohmeyer v. St. Louis Cordage Co., 214 Mo. 685, 113 S. W. 1108; Clark v. Trilinsky, Mo. App., 170 S. W. 2d 459.

▮ It is urged the instruction is prejudicially erroneous in instructing, ''because of the tender age of the plaintiff that she cannot be charged with contributory negligence; so therefore you are further instructed . . . '' Now, it is true there was no issue of contributory negligence in the case. Defendant argues that by the use of the quoted language the court impliedly directed a verdict for plaintiff inasmuch as the term, *contributory* negligence, necessarily presupposes negligence of defendant. Of course, the first clause of the language quoted was, because of plaintiff's age, correct in the abstract; and the jury were thereafter (in the instruction) definitely advised of the essentiality of a finding that defendant was negligent

and that such negligence should be the direct cause of plaintiff's injury. We believe that the use of the quoted language, while unnecessary and argumentative, was not so prejudicial as to require a reversal and remand. Further—while the instruction is long (two and one-half typewritten pages), yet, if attentively followed, it is not so long and involved as to be misleading.

(3) It is contended that the testimony of plaintiff's aunt, Deloris Frakes (who was nearly eleven years of age when offered as a witness, although nine years of age at the time of plaintiff's injury), was not based on an independent recollection of what she saw. The contention is based in part upon the following questions propounded to Deloris on voir dire, and her answers,

"Q. Did they (plaintiff's counsel) ask you where little children might go if they didn't tell the truth? A. Yes, sir . . .

"Q. They did. Did they go over with you . . . and tell you how this accident occurred that involved Ruth Viola? . . . A. Yes.

"Q. Do you intend to testify to the same things that they told you? A. Yes.

"Q. You do. At the time of this accident you were quite excited, were you not? A. Yes, sir. . . .

"Q. Until they told you, when you had talked to them about what happened out there . . . you didn't know up to that time what you would say about this, did you? A. No."

However, other questions were asked,

"Q. Deloris, I want to ask you this. Do you remember Mr. Titus and I (plaintiff's counsel) coming out to your house and talking to you and your mother? A. Yes. . . .

"Q. And did we ask you what happened and did you tell us? A. Yes, sir.

"Q. . . . Did you go over to the scene of the accident with your mother and with Mr. Titus and me? A. Yes.

"Q. And did we ask you to show us what happened? A. Yes.

"Q. And did we tell you what happened or did you show us what happened? A. I showed you. . . .

"Q. And have either Mr. Titus or myself ever suggested to you that you tell a story or an untruth about this? A. No."

A child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which he is examined, or of relating them truly, is incompetent to testify. Section 1895, R. S. 1939, Mo. R. S. A. sec. 1895. A child of the age of ten years is prima facie competent. State v. Anderson, 252 Mo. 83, 158 S. W. 817. In State v. Jackson, 318 Mo. 1149, 2 S. W. 2d 758, a girl of eleven years was held incompetent; but it appeared from the child's testimony that she was "appallingly ignorant." Contention

(3) is ruled against defendant. There is no precise age at which children become competent to testify. It is the trial court's discretionary province to determine a child's competency, and the trial court's decision is not reviewed unless there has been a clear abuse of discretion. State v. Anderson, supra; State v. Headley, 224 Mo. 177, 123 S. W. 577; and examine Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S. W. 2d 858.

(4) When first offered as a witness, Deloris Frakes cried while on the witness stand. The court overruled defendant's motion for a mistrial, but advised, in effect, that the witness could testify the following morning, if "she is not crying." The witness was withdrawn. Plaintiff's mother cried while seated at counsel table during counsel's argument to the jury. Upon defendant's objection and motion for a mistrial, the trial court directed, "Have her step outside." The trial court had admitted into evidence, over defendant's objection, two photographs of plaintiff. The pictures are of plaintiff in the nude; but it could not be denied that these photographs clearly show the nature of plaintiff's injuries. It seems, the photographs were also "waved" by plaintiff's counsel during his argument of the cause. And plaintiff's counsel, in addressing the jury, went dangerously close to the limits of the field of legitimate argument. He urged,

". . . That child will know what it means when she is old enough to be married, whether or not she can go out and play with her children and lift them up and bounce them around, her own child on her own knee, or whether she will be holding her child on a wooden knee, something that has no feeling, no life, no pulsation.

". . . They took her out to the hospital and performed an emergency operation, as the doctor told you, a Guillotine amputation is an emergency amputation. From that time on what pain and suffering she has told us is only the beginning. Consider the mental anguish she will experience from now on. Think what that will mean to a young woman when she wants to meet boy friends. . . . .

". . . Give this girl the benefit of what you men know it is worth to lose a limb when you are three years old and have to go through the rest of your life. It isn't like a person twenty-five or thirty years old losing a leg, when you are three years old, men, when you are three years old, a child, a babe in arms, ready to enter the threshold of life, to travel rough and stony pathways many people have to travel, and we know that that child will never have anything more than a wooden limb to walk on, . . . "

Questions here considered are those which were addressed to the trial court's sound discretion. Relating to the contention of error in failing to declare a mistrial because plaintiff's witness, Deloris, and plaintiff's mother cried while in the presence of the jury, see Borrson v. Missouri-Kansas-Texas R. Co., Mo. Sup., 161 S. W. 2d 227, and

cases therein cited. Of asserted error in allowing the introduction of photographs of plaintiff, see Lackey v. Missouri & K. I. R. Co., 305 Mo. 260, 264 S. W. 807; and Lynch v. Baldwin, Mo. Sup., 117 S. W. (2d) 273. Of demonstrative exhibitions, generally, see Smith v. Thompson, 346 Mo. 502, 142 S. W. 2d 70. And of the contention of error relating to argument of counsel, see Willis v. Atchison, T. & S. F. R. Co., 352 Mo. 490, 178 S. W. 2d 341; and Goyette v. St. Louis-San Francisco R. Co., Mo. Sup., 37 S. W. 2d 552. The argument of counsel was not such as would arouse hostility, resentment, aversion and prejudice toward defendant, as were the remarks of counsel in the cases of Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S. W. (2d) 454; and Walsh v. Terminal R. Ass'n. of St. Louis, 353 Mo. 458, 182 S. W. 2d 607, cited by defendant. The tender age of plaintiff and the nature of her injuries are, in themselves, appealing to anybody's sympathy. The incidents and the argument, of which defendant complains, appear not to have been believed by the trial court to have been sufficient grounds for a new trial. However, as stated, the amount of the jury's award was reduced by the trial court. We infer that, in the trial court's view, the incidents and argument complained of did not affect ▇▇▇▇ the verdict upon the question of defendant's liability, although the amount of the jury's award may have been affected. We hold the trial court did not abuse its discretion in ruling these questions.

▇ (5) It is contended that the award of $18,000 is excessive. Immediately after plaintiff was injured she was taken to General Hospital where a guillotine operation was performed. Such an operation is an emergency amputation performed with no particular emphasis upon the proper preparation of the stump of a limb to accommodate an artificial extremity. Primary aims in such surgery are to control hemorrhage and to get the patient back to bed for the treatment of shock. Fourteen days later, plaintiff sustained another amputation in which the muscles of the stump were retained and sutured over together with fat pads, the nerves and blood vessels stripped up, and the stump thus prepared to accommodate an artificial leg. Of course, both amputations were attended and followed by pain and suffering. Plaintiff was confined in the hospital from the date of her injury until March 31, 1943. At the time of trial plaintiff was wearing an artificial limb into which the stump of her left leg was thrust, the artificial member being sustained by a lacing of leather over her thigh "almost to her hip," and by a strap passing "kind of around her stomach" and over her right shoulder. She complains, in the summertime, of pain in the stump of her leg. Loss of the leg was not the only injury suffered. Injuries left permanent scars on the lateral side of plaintiff's left thigh and buttock, and there are large, ugly, irregular scar formations on both the medial and lateral aspects of the right thigh; the scar on the lateral side ex-

tends over the knee. There was a "running sore" on the lateral side of the right thigh until "sometime up in the summer" of 1943. Her right thigh pains her. She is restless at night and cries out in her sleep. A condition of "bad body mechanics" in the lower part of plaintiff's back is due to the artificial extremity and will continue until she reaches maximum growth, when this condition will be greatly relieved by the use of an artificial limb of finally correct length.

Manifestly, money cannot effect the restoration of plaintiff's physical body. None would exchange a whole body for a sum of money. Courts hold an amount of recovery should be measured by that which is fairly and reasonably compensatory. Fair and reasonable compensation in a case must rest upon the facts as viewed in relation to economic conditions, and with a regard to reasonable uniformity. In the case of Bryant v. Kansas City Rys. Co., 286 Mo. 342, 228 S. W. 472, it was held by Court en Banc that the sum of $13,500 was reasonably compensatory for the loss of a leg, amputated above the knee. The plaintiff was a boy less than four years old when injured. The plaintiff had sustained no permanent injuries other than the loss of his leg. The case was decided in the year 1921. In the case of Shields v. Kansas City Rys. Co., Mo. Sup., 264 S. W. 890, decided in the year 1924, a judgment of $13,500 was not disturbed. Plaintiff, a girl, was three years nine months of age when injured. Her leg was amputated "about halfway between the foot and the knee." No other injury was mentioned in the opinion. In the case at bar the award of $18,000 (at this time of decline in the purchasing power of the dollar) should not be held to be "out of line" with the approved awards of the Bryant and Shields cases, when we take into consideration the plaintiff's pain and suffering incident to injuries, other than the loss of her leg, and the resulting ugly and permanent scars we have mentioned.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by Van Osdol, C., is adopted as the opinion of the court. All the judges concur.