J. F. WILLIAMSON v. WABASH RAILROAD COMPANY, a Corporation, Appellant.—No. 39672.—196 S. W. (2d) 129.

Division Two, July 8, 1946.

Motion for Rehearing or to Transfer to Banc Overruled, September 9, 1946.

*J. H. Miller, John S. Marley* and *Sebree, Shook & Gisler* for appellant.

*Trusty & Pugh, Guy W. Green, Jr.,* and *Raymond L. Falzone* for respondent.

TIPTON, J.—This is an action under the Federal Employers' Liability Act, filed in the circuit court of Jackson County, Missouri. Respondent, J. F. Williamson, obtained a judgment for $17,500 for injuries received by him on account of a collision of two trains operated by appellant, Wabash Railroad Company. From this judgment appellant has duly appealed.

Appellant's first assignment of error is that the court should have sustained its motion for a directed verdict at the close of all of the evidence.

The record shows that on April 11, 1944, the crew of appellant's freight train No. 92 consisted of the engineer J. M. Meck, the fireman

Ewing, the conductor Carson Adams, the rear brakeman John Hawkins, and the head brakeman Respondent Williamson. This crew took charge of the train at Stanberry, Missouri, and there they checked their watches. Before the train left Stanberry the crew was given a train order to the effect that passenger train No. 11 would wait at Gallatin until 2:15 A. M. for train No. 92, and that No. 92 should stop at Jameson if it could not reach Gallatin in time to clear No. 11 by 2:10 A. M., or five minutes before No. 11 was due to leave Gallatin.

Respondent was sitting on the left side of the engine in the brakeman's seat, which is ahead of the fireman's seat, looking ahead. There are three curves between Jameson and Gallatin at which the speed had to be reduced to 35 miles an hour. When No. 92 got to Jameson respondent looked at his watch and it was 2:05 A. M. As the engineer did not slow down there respondent said to him, "John, we can't make it." The engineer replied, "I've got plenty of time." Respondent testified that he knew they could not cover the 6.7 miles to Gallatin in time to clear No. 11 by 2:10 as required by the train order. After the above statements between the engineer and respondent nothing further was said between them until respondent called, "Headlight." The engineer leaned out of the window to see around the curve and at the same time applied the emergency brake. The other train was then about 100 yards away. When respondent saw the headlight the freight train was on straight track, looking across the inside curve, and No. 11 was on the other side of the curve. The fireman, respondent and the engineer jumped off the engine on the fireman's side. At the time of the collision No. 92 had reduced its speed to about 10 miles an hour and No. 11 had practically stopped. The engineer of No. 11 first saw No. 92 when it was about 700 feet away.

Respondent introduced in evidence several operating rules of appellant. Rule 865 makes the conductor responsible for the movement, safety and proper care of the train and for the vigilance and conduct of the men employed thereon. Rule 99 makes the conductor and engineer equally and jointly responsible for the protection of the train. Rule 106 makes both the conductor and engineer responsible for the safety of the train, the observance of rules, and the taking of every precaution for protection in situations not covered by rules. Rule 835 makes the engineer and fireman jointly and equally responsible for the movement and protection of the train.

During the trial appellant admitted that both the conductor and engineer were negligent, but contended that respondent violated rule 738 and, therefore, its motion for a directed verdict should have been sustained. That rule reads as follows:

"Conductors, trainmen, yardmen, signalmen, operators and others whose duties are connected with the movement of trains, engines or cars, must familiarize themselves with the rules governing the duties

of others as well as of themselves and must be prepared, in case of emergency, to act in any capacity to insure safety. The designation 'conductors' and 'trainmen' in any rule will also include yardmen, when applicable. While general regulations are subdivided for convenience they apply equally to all and must be observed wherever they relate in any way to the proper discharge of the duties of any employe. Trainmen, firemen and yardmen must remind their conductors or engine foremen, and enginemen of the contents of train orders, or the time of superior trains which must be cleared, should there be occasion to do so."

Both appellant's and defendant's witnesses testified that at Jameson respondent said to the engineer, "John, we can't make it." Respondent contends that he complied with rule 738 when he made that statement, that he thereby reminded the engineer of the contents of the train order.

On the other hand, appellant contends that since respondent testified that he knew they could not cover the 6.7 miles to Gallatin in time to clear train No. 11 by 2:10 as required by the train order, an emergency arose; and since the engineer did not stop the train at Jameson he should have set the air brake and stopped the train.

Appellant's superintendent, L. A. High, testified that under the circumstances that existed, if respondent could not persuade the engineer to stop the train, "then he should have acted in any capacity to have stopped the train as required under rule 738." We do not think appellant's construction of this rule is proper. This rule is plain and unambiguous. It requires all employes whose duties are connected with the movement of trains to familiarize themselves with the rules governing the duties of others as well as themselves, and to be prepared to act in any capacity to insure safety in case of an emergency. It is obvious that this rule means that if an employe is incapacitated to perform his duties due to sickness, death or other reasons, the next lower employe should step in and take over the incapacitated employe's duties. This rule does not mean that a subordinate employe should by force take over the duties of a superior employe. We have so ruled in construing a similar rule in the case of Wilson v. Chicago, B. & Q. Railroad Co., 317 Mo. 647, 296 S. W. 1017. When respondent said to the engineer, "John, we can't make it," he called the engineer's attention to the train order, and the engineer understood for his reply was to the effect that he could make it. Respondent thereby performed his duty under rule 738 when he reminded the engineer of the contents of the train order.

Appellant relies upon such cases as Unadilla Valley Ry. Co. v. Caldine, 278 U. S. 139, 73 L. Ed. 224; Unadilla Valley Ry. Co. v. Dibble, 31 Fed. (2d) 239; and Davis v. Kennedy, 266 U. S. 147, 69 L. Ed. 212, to sustain its contention that its motion for a directed verdict should have been sustained. In each of the cases relied upon

the injured employe violated an order or rule which, had it been observed, he would not have been injured or killed. These cases are not in point, as we have already held that the evidence of both appellant and respondent shows that respondent did not violate rule 738. We, therefore, hold that the trial court properly overruled appellant's motion for a directed verdict.

 Appellant requested the court to give instruction "A" which declared that respondent was guilty of negligence which contributed to his injuries. The refusal of this instruction is assigned as error. The company rules introduced by respondent show that the primary responsibility for the operation and safety of a train rests upon the conductor and engineer. Appellant contends that since respondent knew that they could not "make it," that is, could not get to Gallatin in time under the train order, that rule 738 imposed a positive duty to act, as an emergency existed; that since he did not act respondent was negligent and "his negligence bars his recovery even though others may have been negligent." We have already ruled that respondent did not violate rule 738, and, therefore, this instruction was properly refused.

 The trial court gave respondent's instruction No. 1 which directed a verdict for him, leaving the amount of damages for the jury. Appellant assigns the giving of this instruction as error. Appellant admitted that the conductor and engineer were guilty of negligence. Under the Federal Employers' Liability Act this admission makes appellant liable in damages for respondent's injuries, even though respondent might have been guilty of negligence, unless such negligence was the direct and primary cause of his injuries. It is not a complete defense, however, for a railroad company to establish that an injured employe's negligence was a mere secondary or contributing cause cooperating with the negligence of other employes. We have already held that respondent's injuries were not the result of his violating any rule of the company. The record convinces us that that was the sole contention of appellant; that is, that respondent violated rule 738. Appellant's only objection to this instruction when it was given was that it failed to take into consideration the question of proximate cause.

Appellant did not try the case on the theory that the reasonableness of respondent's action in jumping from the train should be submitted to the jury. All three persons on the engine jumped; in fact, appellant's witness Meck, the engineer, testified, "Naturally, you would get off to save your life. . . . If you are going to live you have to do it." He also testified that the practice of jumping off the engine had been followed for years. Likewise, appellant did not try the case on the theory that respondent failed to perform his lookout duty by observing the oncoming train in time to avoid the collision. It was not disputed that he was on the seat in front of the fireman looking

ahead and the train was on the straight track going into the curve when respondent saw the reflection of the headlight of the passenger train and immediately yelled, "Headlight." Since the case was tried on a theory in which the question of proximate cause was not an issue, it was unnecessary to submit that issue to the jury.

In the case of Miller v. Collins, 328 Mo. 313, 40 S. W. (2d) 1062, l. c. 1067, we said:

"Neither in theory nor in reality, notwithstanding a general denial, did defendant dispute these facts. This is shown by defendant's answer and his interrogation of his witness by defendant's counsel. The record shows that defendant tried the cause solely on the theory that plaintiff selected the timber from a mass of material. We think that the omitted requirements were not contested issues, but that the facts were conceded. Defendant cites the cases of Lackey v. United Railways, 288 Mo. 120, 231 S. W. 956; Dunsmore v. Hartmann (Mo. Sup.), 256 S. W. 1031; and Cassin v. Lusk, 277 Mo. 663, 210 S. W. 902, to support his theory. In those cases the omitted essential requirements in the instructions involved contested issues. The instruction criticised did not constitute prejudicial error because of the omission, for defendant did not assume to try the cause on the theory that the omitted findings were in issue. Neal v. Caldwell (Mo. Sup.), 34 S. W. (2d) 104, loc. cit. 112."

We hold that the trial court did not err in giving instruction No. 1 as requested by respondent.

Appellant contends that the trial court erred in not sustaining its motion for a new trial on account of the mistake or perjury of respondent's witness, Dr. M. B. Casebolt. On cross-examination he testified as follows:

"Q. You are not an orthopedic physician?

A. No, sir.

Q. Do you have a specialty?

A. My work is general surgery.

Q. Do you have any particular specialty, Doctor?

A. No, sir.

Q. Aren't you listed in the telephone book as a gynecologist?

A. Yes, sir; that got in there by mistake."

On re-direct examination Dr. Casebolt further testified:

"Q. You have been listed for years and years in your regular business as a general practitioner and surgeon?

A. Yes, sir.

Q. You are not responsible for the way the telephone company listed you?

A. No, sir.

Q. (Mr. Sebree). Is that the first telephone book in which you were so listed?

A. (The witness) Yes, sir."

In support of appellant's motion for a new trial, its attorney Sam Sebree made an affidavit to the effect that in the June 1944 and December 1944 issues of the Kansas City telephone directory Dr. Casebolt was listed under the classification ''Gynecology-Obstetrics'' and could have been so listed only by his own actions.

. Section 115 of the new Code of Civil Procedure, Laws of 1943, page 388, reads:

''A new trial may be granted for any of the reasons for which new trials have heretofore been granted . . .''

Section 1168, R. S. Mo., 1939, provided:

''In every case where . . . the court is satisfied that perjury or mistake has been committed by a witness, and is also satisfied that an improper verdict or finding was occasioned by any such matters, and that the party has a just cause of action or of defense, it shall, on motion of the proper party, grant a new trial . . .''

Evidently the above section is incorporated in the new Code of Civil Procedure by reference. Since this witness did not testify as to how the accident which caused respondent's injuries happened it could not affect the verdict for respondent. His testimony only went to the extent of respondent's injuries, and, therefore, could only affect the size of the verdict under any conditions.

This witness did not hold himself out to be a specialist but a general practitioner. It is at best only an attempt to impeach his testimony on a collateral matter. This is not a case where he held himself out as a specialist when, in fact, he was only a general practitioner. Moreover, the evidence shows that he had been in the general practice of medicine in Kansas City for twenty years and was listed in the telephone directory only for the two issues of 1944 under ''Gynecology-Obstetrics.'' Since his testimony was in fact similar to that of the other physician we do not believe appellant was prejudiced thereby, even if the witness were responsible for such listing, which he denied.

Appellant's last assignment of error is that the judgment is excessive. The jury returned a verdict for $22,500. The trial court ordered a remittitur of $5,000 and entered a judgment for $17,500.

Respondent testified that the lower part of his back and left shoulder were injured; that after the accident he had so much pain he could not lie down and was taken to the Wabash Employes' Hospital at Moberly; that he was x-rayed on April 15, 1944, and put in a body cast which extended from under his arms and covered his whole body and one leg; that the cast remained on his body until June 19, 1944; that then his back was taped for a week; that he has continual pain in his back and has to wear a belt for support; that he is very nervous and cannot rest well at night; that the motion in his arm is limited and he has pain in his shoulder joint; that he goes to the hospital every morning for treatments but his shoulder and back are not im-

proving; that he cannot stand when his brace is off; and when sitting he has a dull, numb feeling down his legs. He also testified that he has not been able to do any work since the accident; that. he asked appellant for light work and was told it had none; and that his monthly earning before the accident was $326.00. Appellant's testimony was that he made about $277.00 per month.

The medical testimony tended to show that the right hip was more prominent than the left; that there was a right dorsal, left lumbar scoliosis; that palpitation revealed bilateral lumbo-sacral tenderness, acute tenderness over the lumbo-sacral joint; that percussion of the back revealed tenderness over the 12th dorsal and first sacral vertebrae; that forward bending was limited to two-thirds of normal and back bending was markedly limited and painful in the lumbo-sacral region; that right straight leg raising was limited to 76 degrees while normal is 90; that the patient complained of pain over the lumbo-sacral region, and that tests revealed a decrease in the sense of feeling over the lateral surface of the left thigh, calf and lateral surface of the left back.

X-rays revealed a definite narrowing of the joint space between the 5th lumbar and first sacral vertebrae; that there is a spina bifida of the first sacral vertebra and increased sacral inclination; that there was a protruding inter-vertebral disc with lumbo-sacral strain; and that the inter-vertebrae disc condition is in addition to the fracture of the articulation between the 4th and 5th lumbar vertebrae. The medical testimony was to the effect that the condition of the back is permanent without surgery, which might or might not give him relief; that they found muscle spasm in the left shoulder; and that he is able to raise his arm only a little above horizontal. There was testimony that the shoulder would get definitely better and possibly recover entirely. The impairment of sensation over the thigh and down into the foot, according to the medical testimony, indicates probable pressure on the roots of the nerves that supply that part of the leg or extremity. These roots are in the small of the back.

We have set out the evidence most favorable to respondent as we must do in considering whether a verdict is excessive. It is only where the trial court has abused its discretion in ordering a remittitur, or in failing to order a remittitur, or in the amount of remittitur ordered, that a judgment is reviewable by this court. Dodd v. Missouri-Kansas-Texas R. Co., 354 Mo. 1205, 193 S. W. (2d) 905.

When we consider the age of respondent, which was 48 years, the testimony that these injuries were permanent, the pain and suffering he has endured and will endure, the loss of wages in the past and probable loss in the future, the changing economic conditions, and the decline of the purchasing power of the dollar, we do not think the award in this case excessive. Petty v. Kansas City Public Service Co., 354 Mo. 823, 191 S. W. (2d) 653; and Young v. Terminal R. R. Assn.,

192 S. W. (2d) 402. We have examined the cases cited by appellant and find that the injuries in those cases are not identical with the injuries in this case; moreover, they were all decided before the present economic change and, therefore, are not decisive in this case. We are of the opinion that the trial court did not abuse its discretion in allowing a judgment for $17,500 to stand.

From what we have said it follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.