Richard FRANK, a Minor, by Harry Frank,
his Father and Natural Guardian,
Appellant,

v.

WABASH RAILROAD COMPANY, a Corporation, and Raymond M. Gillispie,
Respondents.

No. 45320.

Supreme Court of Missouri.

Division No. 2.

Oct. 8, 1956.

Motion for Rehearing or for Transfer to
Court en Banc Denied Nov. 12, 1956.

**18**

Hullverson & Richardson, St. Louis, for appellant.

Ely & Ely, Robert C. Ely, Alphonso H. Voorhees, St. Louis, for respondents.

STOCKARD, Commissioner.

This is an action seeking $25,000 actual and $25,000 punitive damages for false arrest and imprisonment brought on behalf of Richard Frank, a minor, by his father and natural guardian, against the Wabash Railroad Company (hereafter called "Wabash") and Raymond M. Gillispie, a private watchman of Wabash licensed as such by the City of St. Louis. John E. Murphy was also named as defendant by plaintiff but there was a voluntary dismissal as to him at the close of all the evidence.

It was alleged that plaintiff was imprisoned as the result of what is commonly termed a false arrest at the hands of Gillispie. Defendants denied generally the essential allegations of the petition and alleged that plaintiff and four companions of his were detained by Gillispie because they were committing acts of trespass in violation of a city ordinance, declared to constitute a misdemeanor, and because they were interfering with the safe operation of a Wabash train and endangering the passengers riding thereon by throwing sticks and rocks at and against the train, also declared to be a misdemeanor by Section 560.325 RSMo 1949, V.A.M.S.

Trial was had to a jury which rendered a verdict for defendants. After judgment on said verdict, and after motion for a new trial was overruled, plaintiff perfected this appeal.

We first must necessarily dispose of a motion by respondents to dismiss this appeal for the reason that appellant's brief fails to comply with Supreme Court Rule 1.08, 42 V.A.M.S., in that it does not contain "A fair and concise statement of the facts without argument" and includes "Irrelevant facts and testimony". After reading carefully all of the testimony we are constrained to say that the motion is not entirely without merit. However, the violations are not such as to warrant dismissal of the appeal. The motion is overruled.

At the place where the arrest took place the Wabash maintains and operates double railroad tracks which lie in an excavation or depression. Prior to the incident leading up to the arrest in this case, Wabash had received several reports that boys were throwing rocks at trains near its Delmar station in St. Louis. On two occasions windows were broken in trains, apparently as the result of thrown rocks, and in one case a passenger had received injuries from the broken glass. By reason of this Wabash had sent Gillispie to the area of the Delmar station to look for persons throwing rocks at its trains. On the afternoon of April 17, 1951, plaintiff and four companions went to an area referred to as "Albrecht's Lot" which belonged to the City of St. Louis and adjoined Wabash's tracks. Although denied by the boys who testified, including plaintiff, there was substantial evidence from which a jury could find that the boys were running back and forth across the tracks, and that a short time before a train was due to arrive at the nearby Delmar station they were told by an employee of Wabash that they had better get off the tracks but they did not do so, and also that they threw sticks and rocks at a Wabash passenger train as it passed, some of which hit the train.

Gillispie testified that he saw the boys throw sticks and rocks at the train, and that when they climbed up the embankment forming the slanting side of the excavation for the tracks he took them into custody. The boys went with Gillispie at his request to the Delmar station where he called Murphy, his superior, and he then called the

city police who took the boys to the 12th District Police Station. After the boys were questioned by the police and "talked to" by Murphy they were taken to their homes.

■ It was admitted by the defendants that Gillispie took plaintiff into custody without a warrant. Plaintiff contends that the trial court erred in denying his motion for a directed verdict as to liability because Gillispie, as a matter of law, had no authority greater than that of a private citizen, who (with certain exceptions not here applicable) is not privileged to arrest another without a warrant for the commission of a misdemeanor. For the "unusual situations" in which a plaintiff may be entitled to a directed verdict as to liability see Cunningham v. Reagan, Mo.Sup., 273 S.W.2d 174; Rogers v. Thompson, 364 Mo. 605, 265 S.W. 2d 282; Williamson v. Wabash Railroad Company, 355 Mo. 248, 196 S.W.2d 129.

Sections 84.340 and 84.330 (all statutory references are to RSMo 1949, V.A.M.S.) respectively are as follows:

"84.340. Board of police—power to regulate private detectives, etc. (St. Louis).—The police commissioner of the said cities shall have power to regulate and license all private watchmen, private detectives and private policemen, serving or acting as such in said cities, and no person shall act as such private watchman, private detective or private policeman in said cities without first having obtained the written license of the president or acting president of said police commissioners of the said cities, under pain of being guilty of a misdemeanor."

"84.330. Police force members are officers of state (St. Louis).—The members of the police force of the cities covered by sections 84.010 to 84.340, organized and appointed by the police commissioners of said cities, are hereby declared to be officers of the said cities, under the charter and ordinances thereof, and also to be officers of the state of Missouri, and shall be so deemed and taken in all courts having jurisdiction of offenses against the laws of this state or the ordinances of said cities."

Wabash contends, and as evidenced by the instructions given it was the position of the trial court, that these two sections and the license as a private watchman issued to Gillispie by the Board of Police Commissioners of the City of St. Louis, authorized him to arrest plaintiff under the circumstances of this case. We have found no opinion of the appellate courts of this state directly in point, however the contention of Wabash is in accord with the ruling of the trial court in a similar case in the United States District Court for the Eastern District of Missouri. See Barnard v. Wabash R. Co., 208 F.2d 489.

Because of the methods of operation and type and nature of the equipment, acts of malicious mischief, when done in relation to or against railroad property, could have disastrous consequences to the members of the public riding on the railroad and to the railroad property. In order to protect their property and the public it is necessary that railroads employ private watchmen or policemen, and in order that those persons so employed can effectively perform the duties assigned to them it is not uncommon for them to be given authority pertaining to arrests greater than that of private individuals. As stated in National Labor Relations Board v. Jones & Laughlin Steel Corporation, 331 U.S. 416, 429, 67 S.Ct. 1274, 1281, 91 L.Ed. 1575, 1583, "It is a common practice in this country for private watchmen or guards to be vested with the powers of policemen, sheriffs or peace officers to protect the private property of their private employers." This procedure affords a method of obtaining the extra and essential police protection by those companies requiring it without the cost being placed upon the public generally. For examples where persons employed by railroads were invested with police powers, see Thornton v. Mis-

souri Pacific R. Co., 42 Mo.App. 58; Cincinnati, New Orleans and Texas Pacific Railway Company v. Cundiff, 166 Ky. 594, 179 S.W. 615, Ann.Cas.1916C 513; McKain v. Baltimore & Ohio Railroad Company, 65 W.Va. 233, 64 S.E. 18, 23 L.R.A.,N.S., 289, 131 Am.St.Rep. 964, 17 Ann.Cas. 634; Taylor v. New York & Long Branch Railroad Company, 80 N.J.L. 282, 78 A. 169, 39 L.R.A.,N.S., 122; Deck v. Baltimore & Ohio Railroad Company, 100 Md. 168, 59 A. 650; Sharp v. Erie Railroad Company, 184 N.Y. 100, 76 N.E. 923. See also the collection of cases pertaining to the liability of a railroad for the acts of a special police officer in 10 Negligence and Compensation Cases, at page 295; 39 L.R.A.,N.S., at page 122; and 17 Ann.Cas. at page 638. In some of the above referred-to cases the railroad was held liable for the acts of the special police officer because he exceeded his authority or for some other reason, but these cases demonstrate the wide-spread and accepted practice of the employment by railroads of persons who are vested with limited police powers in order to provide without expense to the public the required and necessary police protection of railroad property.

For the reason that there was substantial evidence that in the presence of Gillispie plaintiff and his companions threw sticks and rocks at a passing Wabash passenger train, conduct declared to be a misdemeanor by Section 560.325, the issue in this case is narrowed to the question of whether Gillispie possessed the authority of a police officer to arrest plaintiff for the commission of a misdemeanor in his presence.

■ At the time of the arrest, Gillispie held a valid license as a private watchman issued to him by the Board of Police Commissioners of the City of St. Louis. Appellant contends that Section 84.330 can have no application to Section 84.340, but the position we take makes unnecessary a determination of this question. Section 84.-340 authorizes the City of St. Louis to license private watchmen and to regulate the

private watchmen so licensed. The purpose of a license is to grant to the licensee a special privilege or authority not enjoyed by the class of people to which the licensee belongs to do certain things which without the license would be illegal. State v. Parker Distilling Company, 236 Mo. 219, 237 Mo. 103, 139 S.W. 453. Most of the reported cases concerning licenses pertain to the right of the licensing authority to impose a license tax or fee and not to the question of what privilege or authority is granted by the license. Here we have only the latter question.

■■ A policeman is the legal equivalent of the "watchman" at common law who possessed the power of arrest now vested in what we refer to as peace officers. State v. Evans, 161 Mo. 95, 61 S.W. 590; Porter v. State, 124 Ga. 297, 52 S.E. 283, 2 L.R.A.,N.S., 730; 6 C.J.S., Arrest, § 6 f. "Police power" is not synonymous with "police force," and a city may supplement the police protection which it provides by authorizing, under appropriate regulations, private persons to perform some of its police functions. McQuillin, Municipal Corporations, 3rd ed., § 45.06. In our opinion this is what was done in this case. By licensing Gillispie as a private watchman the City of St. Louis delegated to him and invested him with the authority, but as limited in the license, of a "watchman" as that term was known at common law or of a policeman as that term is now known. The license issued to Gillispie limited his authority to act as a private watchman "in and around" the private property of Wabash while employed by Wabash, and also limited his right to carry a revolver or pistol "to the actual time engaged in the duties of watchman, as above described and as specified in (his) application, and not elsewhere." The oath Gillispie was required to take supports the above conclusion. Before the license was issued, and as a condition thereof, he was required to affirm, among other things, that he would wear such dress, badge or emblem that the Board of Police Commissioners may from time to time desig-

nate; report to the captain in charge of the police district to which assigned, and obey all lawful orders and rules and regulations of the Board of Police Commissioners of the City of St. Louis, the chief of police and any officer placed over him.

By virtue of the license of a private watchman Gillispie was authorized to make an arrest, in the locations and during the time specified in his license, under the same circumstances as would a member of the police force of the City of St. Louis. Therefore the trial court did not err in refusing to direct a verdict for plaintiff on the issue of liability.

▇▇▇▇ Plaintiff next contends that the trial court erred in giving instruction 3 at the request of the defendants and in refusing instruction M requested by him. By instruction 3 the jury was told that on the day of the arrest of plaintiff by Gillispie there was in full force and effect an ordinance (the pertinent parts of which were set out in the instruction) pertaining to trespass, and providing that one violating the provisions thereof shall be deemed guilty of a misdemeanor. The instruction then further stated that if the jury found certain facts as hypothesized plaintiff was guilty of a misdemeanor. Plaintiff contends that the trial court erred in giving this instruction because the ordinance is invalid for the reason that it is not in harmony with Section 560.405, a general law of the state on trespass.

Defendants pleaded in their answer that at the time of the arrest of plaintiff he was a trespasser in violation of this ordinance and therefore guilty of a misdemeanor. The terms of the ordinance were set out in full in the answer. Plaintiff filed no reply and first challenged the validity of the ordinance when it was offered in evidence.

It is true that municipal ordinances regulating subjects, matters, and things upon which there is a general law of the state must be in harmony with the state law. John Bardenheier Wine & Liquor Co. v. City of St. Louis, 345 Mo. 637, 135 S.W.2d 345; City of Cape Girardeau v. Pankey, Mo.App., 224 S.W.2d 588. However, we need not determine whether the ordinance in this case is invalid. The invalidity of an ordinance in the respect relied upon by plaintiff, like the unconstitutionality of a statute, must be raised at the first opportunity, and if not so raised, its invalidity is deemed waived. Roper v. Greenspon, 272 Mo. 288, 198 S.W. 1107, L.R.A.1918D 126; McGrath v. Meyers, 341 Mo. 412, 107 S.W. 2d 792; Carney v. Chicago, Rock Island & Pacific Railway Company, 323 Mo. 470, 23 S.W.2d 993; Clark v. Trilinsky, Mo.App., 170 S.W.2d 459; Petty v. Kansas City Public Service Company, 354 Mo. 823, 191 S.W. 2d 653; City of St. Louis v. Langeneckert, Mo.App., 210 S.W.2d 736. In Roper v. Greenspon, supra, an ordinance was pleaded in the answer. Its validity was not challenged in the reply. It was there held [272 Mo. 288, 198 S.W. 1108], that the invalidity of an ordinance must be asserted "at the first open door under the orderly procedure in the case", and that if the defense "in its answer relies upon a pleaded ordinance, then the reply would be the first open door." No reply was filed in this case and none was required in order to have the pleadings at issue, but a reply was permissible. In addition, if it was the position of plaintiff that the ordinance was invalid, and therefore could not properly constitute a matter of defense, a motion to strike the pleadings pertaining to the ordinance was available to defendants.

Plaintiff does not contend that instruction 3 was erroneous for any reason other than the claimed invalidity of the ordinance, and we conclude that this issue was not properly and timely raised, and was therefore waived. Plaintiff's requested instruction M was based upon the theory that the ordinance was invalid, and was inconsistent with instruction 3 which we hold was properly given under the circumstances. Therefore the trial court did not err in refusing to give instruction M.

Instruction 5, given at the request of the defendants, was as follows: "The Court instructs the jury that plaintiff has the burden of proof, which means that he must prove by the greater weight of the evidence that defendants falsely arrested and imprisoned him and that he was damaged; and unless you find that the greater weight of the credible evidence is in his favor, he has not sustained his burden of proof, and your verdict shall be in favor of defendants." Plaintiff asserts that it was error to give this instruction and that the trial court also erred in refusing instructions R and W, requested by plaintiff, which told the jury that the burden of proof was on the defendants to show by the preponderance or greater weight of the credible evidence that such arrest was lawful or that Gillispie had legal justification or excuse for making the arrest.

We think plaintiff has confused the burden of proof with the burden of going forward with the evidence. Ordinarily in an action for false arrest plaintiff makes a prima facie case entitling him to go to the jury when he presents evidence that the arrest was made and that it was made without a warrant. Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68; Engelbrecht v. Roworth, 236 Mo.App. 459, 157 S.W.2d 242. It has been said that when this is shown, and there is no evidence by the defendant in justification of the arrest, the arrest will be presumed to be unlawful. Pandjiris v. Hartman, 196 Mo. 539, 94 S.W. 270; Greaves v. Kansas City Junior Orpheum Co., 229 Mo.App. 663, 80 S.W.2d 228. Therefore, when plaintiff presents evidence of the arrest without a warrant the defendant then has the burden of presenting evidence to show a justification for the arrest. Pandjiris v. Hartman, supra; Engelbrecht v. Roworth, supra; Hanser v. Bieber, supra. But when this burden of going forward with the evidence is assumed, as it was in this case, the question of whether, under all the facts and circumstances shown by the evidence, the arrest was justified is a question for the jury. While the burden of

going forward with the evidence may shift during the progress of the case, the burden of proof, absent a statutory provision to the contrary, see Brown v. Sloan's Moving and Storage Company, Mo.Sup., 274 S.W.2d 310, remains with the party having the affirmative of the issue, in this case the plaintiff, until the termination of the case. McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641; Galloway v. Galloway, Mo. Sup., 169 S.W.2d 883; Bowers v. Etherton, Mo.Sup., 216 S.W.2d 83; Been v. Jolly, Mo. Sup., 247 S.W.2d 840; Hodgson v. Pixlee, Mo.Sup., 272 S.W.2d 222. Instruction 5 correctly set forth the rule as to the burden of proof in this case, and the trial court properly refused instructions R and W.

Plaintiff's next contention is that the trial court erred "in refusing to permit cross-examination of codefendant Murphy regarding his false swearing in his affidavit for license as private watchman." Murphy was a party defendant and was called as a witness by plaintiff. Plaintiff "cross-examined" Murphy concerning his conversations with Gillispie and with plaintiff and his companions, and also as to his statements to the police officers and to the parents of the boys. Plaintiff then offered in evidence an application executed by Murphy in 1948 for a license as a private watchman which was refused by the trial court. Plaintiff sought to "cross-examine" Murphy concerning the statements made by him in the application to show "his credibility" and "as affecting Murphy's disposition to speak the truth." While no mention is made of the statute in plaintiff's brief, he apparently bases his claim of the right to impeach the credibility of Murphy upon Section 491.030 which pertains to the right to compel testimony of an adverse party and to cross-examine him.

When the plaintiff calls a defendant as his witness he is entitled to cross-examine him, Section 491.030, and plaintiff is not bound by his testimony unless it is the only testimony in the case on that point. Richeson v. Roebber, 349 Mo. 132, 159 S.W.2d

658, 141 A.L.R. 1. He has the right to introduce evidence contradicting that given by the defendant. But a party cannot *directly* impeach the credibility of his own witness even though he be the other party to the suit. City of Gallatin ex rel. Dixon v. Murphy, Mo.App., 217 S.W.2d 400; Black v. Epstein, 221 Mo. 286, 304, 120 S.W. 754, 760; Maginnis v. Missouri Pacific Railway Company, 268 Mo. 667, 187 S.W. 1165; Smith v. Ohio Millers' Mut. Fire Ins. Co., 320 Mo. 146, 6 S.W.2d 920, 929; Richeson v. Roebber, supra; Kansas City v. Reinwald, Mo.Sup., 270 S.W.2d 863. The trial court properly refused to permit plaintiff to impeach the credibility of Murphy.

Plaintiff's last allegation of error is that instruction 9 in two respects hypothesized matters not supported by competent evidence. We do not agree with plaintiff, but it is not necessary to detail the evidence concerning this matter. Instruction 9 was not a verdict-directing instruction. It pertained only to punitive damages. The verdict of the jury was for the defendants. Therefore, the jury never got to the question of actual or punitive damages, and plaintiff could not have been prejudiced by the claimed error, if any, in instruction 9. Dryden v. St. Louis Public Service Co., Mo.Sup., 264 S.W.2d 329; Young v. New York, Chicago & St. Louis Railway Company, Mo.Sup., 291 S.W.2d 64; Corbin v. Fidelity Health & Acc. Mut. Ins. Co., Mo.App., 265 S.W.2d 440.

The judgment is affirmed.

BOHLING, C., concurs.

BARRETT, C., dissents.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.